IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID A. RICHARDSON,            )
                                )
        Plaintiff,              )
v.                              )        Civil Action No. 3:18CV23–HEH
                                )
HAROLD CLARKE, *et al.*,        )
                                )
        Defendants.            )

MEMORANDUM OPINION
(Granting in Part and Denying in Part Defendants' Partial
Motion to Dismiss, or in the Alternative, Motion to Sever)

The matter is before the Court on Defendants' Partial Motion to Dismiss, or in the

Alternative, Motion to Sever and Richardson's response thereto.  Additionally, the Court

will exercise its responsibility under 42 U.S.C. § 1997e(c)(2) to dismiss claims that are

frivolous or fail to state a claim.[1]

I. PROCEDURAL HISTORY

David A. Richardson, a Virginia inmate proceeding *pro se*, originally sought to

bring this action with a number of other inmates.  By Memorandum Order entered on

April 25, 2018, the Court informed Richardson that the action would proceed with

Richardson as the sole plaintiff.  By Memorandum Order entered on June 13, 2018, the

Court directed Richardson to file an Amended Complaint within thirty (30) days of the

date of entry thereof that raised only claims based upon his own circumstances.

---

[1] That statute provides, in pertinent part, that, "[i]n the event that a claim is, on its face, frivolous,
malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a
defendant who is immune from such relief, the court may dismiss the underlying claim . . . ." 42
U.S.C. § 1997e(c)(2).

Richardson did not comply with the June 13, 2018 Memorandum Order. Instead, Richardson objected to that Memorandum Order. Richardson insisted that he could not comply with June 13, 2018 Memorandum Order because he is both deaf and legally blind. However, Richardson's submissions reflected that he was capable of drafting and submitting a basic complaint. By Memorandum Order entered on October 30, 2018, the Court overruled Richardson's objection to the June 13, 2018 Memorandum Order and directed Richardson to file an appropriate Amended Complaint. On November 8, 2018, Richardson submitted his Amended Complaint, (ECF No. 26), and thereafter the Court served the Defendants.

The Amended Complaint was roughly 100 pages long, listed 5 defendants, contained 10 counts/claims for relief, and demanded monetary damages and injunctive relief. Richardson complained that his rights under the Constitution, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act were violated by the conditions of his incarceration at the Greensville Correctional Center.

Defendants responded to the Amended Complaint by filing a Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e). "Rule 12(e) allows a defendant to move for a more definite statement if the complaint 'is so vague or ambiguous that [it] cannot reasonably be required to frame a responsive pleading.'" *Hodgson v. Va. Baptist Hosp. Inc.*, 482 F.2d 821, 822–23 (4th Cir. 1973) (quoting Fed. R. Civ. P. 12(e)). Defendants stated that they were at "a loss in formulating a response to

the Amended Complaint because of its format, its lack of specificity in dates, times, incidents or persons involved, and its general lack of organization." (ECF No. 34, at 2.) Defendants asserted that it would be "more efficient and equitable to permit Richardson time to submit more facts to support any of his claims that may be meritorious, while excluding facts that are not specific or relevant to him." (*Id.*) Richardson objected to Defendants' Motion for a More Definite Statement and noted, once again, that because he is legally blind and deaf, his disabilities and Defendants' lack of accommodations make it very difficult for him to litigate this matter. (ECF No. 35.)

Additionally, on April 19, 2019, Richardson informed the Court that he was moved from Greensville Correctional Center to Deerfield Correctional Center. (ECF No. 37.) "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007); *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Accordingly, this circumstance appeared to render moot many of Richardson's demands for relief in the Amended Complaint. Given the foregoing circumstances, by Memorandum Order entered on June 12, 2019, the Court granted Defendants' Motion for a More Definite Statement (ECF No. 33) to the extent that Richardson was directed to file a Particularized Complaint in accordance with the following directions and warnings:

3

a.     At the very top of the particularized pleading, Richardson is directed to place the following caption in all capital letters "PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:18CV23."

b.     The first paragraph of the particularized pleading must contain a list of defendants. Thereafter, in the body of the particularized complaint, Richardson must set forth legibly, in separately numbered paragraphs, a short statement of the **facts** giving rise to his claims for relief. Thereafter, in separately captioned sections, Richardson must clearly identify each civil right violated. Under each section, Richardson must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion. Richardson shall also include a prayer for relief.

c.     The particularized pleading will supplant the prior complaints. The particularized pleading must stand or fall of its own accord. Richardson may not reference statements in the prior complaints.

d.     The particularized pleading may not exceed fifty (50) pages in length.

e.     The particularized pleading must recount specific facts and events relative to Richardson and may not rely upon broad generalizations.

**FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS WILL RESULT IN DISMISSAL OF THE ACTION.** *See* Fed. R. Civ. P. 41(b).

Federal Rule of Civil Procedure 18(a) provides that: "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Nevertheless, when a plaintiff seeks to bring multiple claims against multiple defendants, he must also satisfy Federal Rule of Civil Procedure 20, which provides:

(2) *Defendants.* Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). "Rule 20 does not authorize a plaintiff to add claims 'against different parties [that] present[] entirely different factual and legal

issues.'" *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (alterations in original) (quoting *Lovelace v. Lee*, No. 7:03CV00395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007)). And, a court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of [promoting convenience and expediting the resolution of disputes], but will result in prejudice, expense, or delay.'" *Id.* (quoting *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n. 5 (4th Cir. 2007)). **In this regard, in the forthcoming Particularized Complaint, Richardson may challenge either his conditions at Greensville Correctional Center or at Deerfield Correctional Center.** If Richardson fails to submit an appropriate Particularized Complaint that comports with the joinder requirements, the Court will drop all defendants not properly joined with the first named defendant.

(ECF No. 38, at 3–4 (last emphasis added).)

On October 31, 2019, Richardson filed his Particularized Complaint. (ECF No. 42.) Richardson, however, ignored the Court's admonition that the Particularized Complaint must challenge either the conditions at Greensville Correctional Center ("GCC") or at Deerfield Correctional Center ("DCC"). The Particularized Complaint spans fifty pages and seeks to state eleven counts for violations of his rights at both GCC and DCC. Richardson names as defendants: the Virginia Department of Corrections ("VDOC"), Harold W. Clarke, the Director of the VDOC; Eddie L. Pearson, the Warden of GCC from October 27, 2014 until April 2, 2019; and Tammy Williams the Warden of DCC. (*Id.* at 1–2.) On January 14, 2020, Defendants filed a Partial Motion to Dismiss, or in the Alternative, Motion to Sever.

## II. JOINDER

The Federal Rules of Civil Procedure place limits on a plaintiff's ability to join multiple defendants in a single pleading. *See* Fed. R. Civ. P. 20(a). "The 'transaction or

occurrence test' of [Rule 20] . . . 'permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding.  Absolute identity of all events is unnecessary.'" *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).  "But, Rule 20 does not authorize a plaintiff to add claims 'against different parties [that] present[ ] entirely different factual and legal issues.'" *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (alterations in original) (quoting *Lovelace v. Lee*, No. 7:03CV00395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007)).  "And, a court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of [promoting convenience and expediting the resolution of disputes], but will result in prejudice, expense, or delay.'" *Id.* (quoting *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007)).

In addressing joinder, the Court is mindful that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  This impulse, however, does not provide a plaintiff free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  Thus, "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his

6

copyright, all in different transactions—should be rejected if filed by a prisoner."

*George*, 507 F.3d at 607.

"The Court's obligations under the PLRA include review for compliance with

Rule 20(a)." *Coles v. McNeely*, No. 3:11CV130, 2011 WL 3703117, at *3 (E.D. Va. Aug

23, 2011) (citing *George*, 507 F.3d at 607).

> Thus, multiple claims against a single party are fine, but Claim A
> against Defendant 1 should not be joined with unrelated Claim B against
> Defendant 2. Unrelated claims against different defendants belong in
> different suits, not only to prevent the sort of morass that these complaints
> have produced but also to ensure that prisoners pay the required filing fees.

*Id.* (citing 28 U.S.C. § 1915(g); *Showalter v. Johnson*, No. 7:08CV00276, 2009 WL

1321694, at *4 (W.D. Va. May 12, 2009)).

As the Court previously observed, Richardson could not properly join all of his

claims occurring at GCC and the defendants implicated therein with all of his claims

occurring at DCC and the defendants implicated by those claims. Permitting these

disparate, vague claims to proceed in a single suit would be inconvenient and further

delay the resolution of all the claims. *See Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d

at 218 (citing *Aleman*, 485 F.3d at 218 n.5). Accordingly, all claims against Warden

Pearson and pertaining to Richardson's incarceration at GCC will be dismissed without

prejudice.

### III. STANDARD FOR THE MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952

(4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim,

a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the

light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th

Cir. 1993); *see also Martin,* 980 F.2d at 952. This principle applies only to factual

allegations, however, and "a court considering a motion to dismiss can choose to begin

by identifying pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement

of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v.*

*Gibson,* 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints

containing only "labels and conclusions" or a "formulaic recitation of the elements of a

cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient

"to raise a right to relief above the speculative level," stating a claim that is "plausible on

its face," rather than merely "conceivable." *Id.* at 555, 570 (citation omitted). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp.,* 550 U.S. at 556). In order for a claim or

complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Furthermore, "Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations . . . not contained in the complaint." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (citations omitted).

## IV. ANALYSIS

Richardson asserts eleven claims for relief against the remaining Defendants—the VDOC, Director Clarke, and Warden Williams ("Defendants"). Specifically, Richardson asserts that:

| | |
|---|---|
| Claim 1 | Defendants violated Richardson's rights under Title II of ADA. (ECF No. 42, at 13–23.) |
| Claim 2 | Defendants violated Richardson's rights under the Rehabilitation Act. (*Id.* at 23–26.) |
| Claim 3 | Defendants violated Richardson's rights under the Virginians with Disabilities Act. (*Id.* at 26–31.) |

9

| Claim 4 | Defendants violated Richardson's rights under section 2.2–3401 of the Virginia Code. (*Id.* at 31–33.) |
|---|---|
| Claim 5 | Defendants violated Richardson's rights under RLUIPA. (*Id.* at 33–35.) |
| Claim 6 | Defendants violated Richardson's rights under the Eighth Amendment. (*Id.* at 35–40.) |
| Claim 7 | Defendants violated Richardson's right to the free exercise of his religion under the First Amendment. (*Id.* at 40–42.) |
| Claim 8 | Defendants violated Richardson's right to free speech under the First Amendment. (*Id.* at 42–43.) |
| Claim 9 | Defendants violated Richardson's right to the free exercise of his religion under the Virginia Constitution. (*Id.* at 43–45.) |
| Claim 10 | Defendants violated Richardson's right to free speech under the Virginia Constitution. (*Id.* at 45–47.) |
| Claim 11 | Defendant violated Richardson's right of access to the courts under the First, Fifth, and Fourteenth Amendments. (*Id.* at 47–49.) |

Given the disjointed manner in which Richardson has set forth his allegations, the most practical way to analyze his claims is to set forth the governing law for each claim and address whether Richardson has adequately pled a claim for relief. However, prior to proceeding to that analysis, it is appropriate to dispense with some of Richardson's claims that are plainly deficient.

## A.     Non-Viable Individual Capacity Claims

In Claims 1 and 2, Richardson seeks to bring claims under Title II of the ADA and the Rehabilitation Act against the VDOC, Director Clarke, and Warden Williams. "[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual

capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*,
280 F.3d 98, 107 (2d Cir. 2001); *see Barnes v. Young*, 565 F. App'x 272, 273 (4th Cir.
2014) (citations omitted). Accordingly, Richardson's individual capacity claims against
Clarke and Williams with respect to the ADA and Rehabilitation Act are improper and
will be dismissed. Additionally, because Richardson appropriately named the VDOC as
a defendant in conjunction with these claims, his official capacity claims under the ADA
and Rehabilitation Act against Clarke and Williams are redundant and will be dismissed.
*Latson v. Clarke*, 249 F. Supp. 3d 838, 856 (W.D. Va. 2017) (dismissing as redundant
ADA and Rehabilitation Act official capacity claims against defendants other than the
VDOC).

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that
a person acting under color of state law deprived him or her of a constitutional right or of
a right conferred by a law of the United States. *See Dowe v. Total Action Against
Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Furthermore, "[b]ecause
vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [allege] that each
Government-official defendant, through the official's own individual actions, has
violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Vinnedge v.
Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of respondeat superior
is inapplicable to § 1983 actions). Section 1983 plaintiffs must "ground [their] legal
conclusions in a sufficiently plausible factual basis" that places each defendant "on notice
of what exactly [he or she] might have done to violate [the plaintiff's] rights under the

11

Constitution." *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). Relatedly, "plaintiffs

may not rely on '[v]ague references to a group of 'defendants,' without specific

allegations tying the individual defendants to the alleged unconstitutional conduct."

*Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) ) (alteration in original) (quoting

*Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008)).

Richardson's complaint repeatedly runs afoul of the foregoing requirements and

repeatedly refers to "Defendants" as a group, without any specific factual allegations

tying Director Clarke to the alleged unconstitutional conduct. *See id.* Accordingly, all

remaining claims against Director Clarke will be dismissed without prejudice.

## B.     Disability Related Claims

In Claim 1, Richardson seeks to bring claims under Title II of the ADA. In Claim

2, Richardson seeks to bring claims under the Rehabilitation Act. In their Motion to

Dismiss, Defendants primarily argue for the dismissal of these claims against the

individual defendants. The Court has granted this aspect of the Motion to Dismiss with

respect to the individual defendants. *See supra* Part IV.A.

In order to state a claim under either the ADA and or the Rehabilitation Act, a

plaintiff must allege facts plausibly asserting that: (1) [he] has a disability, (2) [he] is

otherwise qualified to receive the benefits of a public service, program, or activity, and (3)

[he] was excluded from participation in or denied the benefits of such service, program, or

activity, or otherwise discriminated against, on the basis of [his] disability. *Constantine v.*

*Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citing *Baird*

*ex rel. Baird v. Rose*, 192 F.3d 462, 467–70 (4th Cir. 1999); *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 & n. 9 (4th Cir. 1995)).[2]

Defendants do not delineate Richardson's specific claims under the ADA or dispute that he has stated viable claims under the ADA. Instead, they argue his claim for monetary damages under the ADA must be dismissed. The Court agrees. *See Chase v. Baskerville*, 508 F. Supp. 2d 492, 506 (E.D. Va. 2007), *aff'd*, 305 F. App'x 135 (4th Cir. 2008). "[I]n the context of state prisons, Title II [of the ADA] validly abrogates state sovereign immunity and 'creates a private cause of action for damages against the States' only 'for conduct that *actually* violates the Fourteenth Amendment.'" *Id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). As discussed later in the opinion, the only constitutional claim that Richardson has adequately pled is his First Amendment claim, denial of free exercise of his religion with respect to the wearing of a head covering. Richardson fails to state a companion ADA claim in conjunction with that claim. Accordingly, Richardson's demand for monetary damages under Claim 1 will be dismissed without prejudice.

Defendants argue that Richardson has failed to state any claim under the Rehabilitation Act because "[t]o succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA

---

[2] As pertinent here, the ADA defines a disability to mean "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(A). Among other things, Richardson is hearing impaired and legally blind. (Compl. ¶ 2.)

13

requires only that the disability was 'a motivating cause' of the exclusion." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461–62 (4th Cir. 2012) (quoting *Baird ex rel. Baird*, 192 F.3d at 468–69). This argument, however, is not accompanied by any adequate discussion of the numerous allegations in the Particularized Complaint. Given the inadequacy of this briefing, this aspect of the Motion to Dismiss with respect to Claim 2, will be denied.

Defendants also suggest that Claim 3, wherein Richardson seeks to bring claims under the Virginians with Disabilities Act ("VDA"), should be dismissed because Virginia only has consented to be sued in the circuit courts of Virginia. In support of this proposition, Defendants quote the remedies portion of the VDA, which states:

> *Any circuit court having jurisdiction and venue pursuant to Title 8.01*, on the petition of any person with a disability, shall have the right to enjoin the abridgement of rights set forth in this chapter and to order such affirmative equitable relief as is appropriate and to award compensatory damages . . . .

Va. Code Ann. § 51.5–46(A) (West 2020) (emphasis added). Defendants, however, fail to cite the decision of any court that has concluded the above language prohibits suits under the VDA in federal court. Moreover, there are numerous instances in which the federal courts have entertained claims under the VDA. *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 669 n.6 (4th Cir. 2019) (citing *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012); *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 216 (4th Cir. 1994)). Given the current briefing, Defendants' Motion to Dismiss Claim 3 will be denied without prejudice.

14

### C.   Section 2.2–3401(A) of the Virginia Code

In Claim 4, Richardson seeks to bring a claim under section 2.2–3401(A) of the

Virginia Code.  That section, which pertains to Virginia agency proceedings and

determinations, provides in pertinent part:

> A. In the case of any agency proceeding or determination as to whether there is a violation of law or regulation by a deaf person or whether such person may obtain or retain a license or other right or benefit, and when the agency or deaf person requests an interpreter for the deaf, the agency shall request the Virginia Department for the Deaf and Hard-of-Hearing to appoint a qualified interpreter or shall appoint such an interpreter from a list of qualified interpreters supplied by the Department to interpret the proceedings to the deaf person and to interpret any testimony the deaf person may give.

Va. Code § 2.2–3401 (West 2020).  The above provision does not explicitly or implicitly

create a private right of action.  *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798

F.2d 669, 674 (4th Cir. 1986) ("[F]ederal courts should be reluctant to read private rights

of action into state laws where state courts and state legislatures have not done so.").

Furthermore, there are no reported cases that indicate that the above statute provides a

private right of action.  Given these circumstances, Claim 4 will be dismissed.

### D.   Religious Claims

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).[3]  Thus, to begin, Richardson must allege facts that indicate that

the VDOC's policies impose a "substantial burden" on his religious exercise.   In

determining if Richardson has met this standard, the Court must answer two questions:

"(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?"

*Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004); *see Couch v. Jabe*, 679 F.3d 197,

200–01 (4th Cir. 2012) (employing similar two-part inquiry).

> The Fourth Circuit has explained that a substantial burden
>
> is one that put[s] substantial pressure on an adherent to modify his behavior
> and to violate his beliefs, or one that forces a person to choose between
> following the precepts of h[is] religion and forfeiting [governmental]
> benefits, on the one hand, and abandoning one of the precepts of h[is] religion
> . . . on the other hand.

*Couch*, 679 F.3d at 200 (alterations and omission in original) (quoting *Lovelace v. Lee*, 472

F.3d 174, 187 (4th Cir. 2006)).[4]

As best as the Court can discern, Richardson is an adherent of the Nation of Islam.

(ECF No. 42 ¶ 105.)  Richardson fails to clearly identify his religious beliefs as a member

of the Nation of Islam and fails to articulate what current conditions at DCC have

pressured him to substantially violate his beliefs or prevented him from practicing his

---

[3] In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must allege facts that indicate "that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017) (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).

[4] Defendants concede that Richardson has stated a viable RLUIPA and First Amendment claim with respect to his sincere religious belief that he wear a head covering and that the rules put into place by Warden Williams have restricted this practice.  (ECF No. 48, at 19 n.12, 20.)

beliefs in alternative ways.  Once again, Richardson vaguely references instances during

his incarceration at GCC, rather than DCC, when he feels there was an interference with

some religious practice.  Moreover, in his Complaint, Richardson fails to state facts that

indicate why the listed religious observance was relevant to his personal religious beliefs.

*See Krieger v. Brown*, 496 F. App'x 322, 326 (4th Cir. 2012) (concluding inmate's

"blanket assertion" "that the sacred items were 'necessary' to perform 'well-established

rituals'" was insufficient to establish a substantial burden when inmate failed to "identify

those rituals, or explain why the absence of the sacred items had an impact on the rituals

and violated his beliefs"); *see DeSimone v. Bartow*, 355 F. App'x 44, 46 (7th Cir. 2009)

("noting the insufficiency of a plaintiff's 'unreasoned say-so' to create a triable issue"

(quoting *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006))).  For example, without

providing any factual detail, Richardson alleges that "defendants have deprived the

plaintiff of the opportunity to participate in Ramadan, Lent, [and] Passover . . . ."  (ECF

No. 42 ¶ 104.)  Richardson fails to articulate why his sincerely held religious beliefs

would be substantially burdened if he did not participate in these disparate religious

celebrations.[5]  Further, Richardson fails to articulate in his Particularized Complaint what

actions of Warden Williams or the VDOC actually prevented him from participating in

these celebrations or any other sincerely held religious practices.  Accordingly, with the

---

[5] Indeed, without further explanation it is factually frivolous to suggest that his sincere religious belief requires participation in all of these celebrations.

exception of his religious claim pertaining to wearing a head covering, Claims 5 and 7 will be dismissed without prejudice.

In Claim 9, Richardson asserts that Defendants violated his religious rights under Article 1, Section 16 of the Virginia Constitution.[6] "The Supreme Court of Virginia has explained that provisions of the Virginia Constitution do not provide an independent basis for a private right of action unless they are self-executing." *Bayadi v. Clarke*, No. 7:16CV00003, 2017 WL 1091946, at *6 (W.D. Va. Mar. 22, 2017) (citing *Robb v. Shockoe Slip Found.*, 324 S.E.2d 674, 676 (1985)). The courts have not concluded that this provision is self-executing. *Id.* As questions of state constitutional law are best answered by the state courts, *id.* (citing *Harris Cty. Comm'rs Court v. Moore*, 420 U.S.

---

[6] That section states,

> That religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience; and that it is the mutual duty of all to practice Christian forbearance, love, and charity towards each other. No man shall be compelled to frequent or support any religious worship, place, or ministry whatsoever, nor shall be enforced, restrained, molested, or burthened [sic] in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief; *but all men shall be free to profess and by argument to maintain their opinions in matters of religion, and the same shall in nowise diminish, enlarge, or affect their civil capacities.* And the General Assembly shall not prescribe any religious test whatever, or confer any peculiar privileges or advantages on any sect or denomination, or pass any law requiring or authorizing any religious society, or the people of any district within this Commonwealth, to levy on themselves or others, any tax for the erection or repair of any house of public worship, or for the support of any church or ministry; but it shall be left free to every person to select his religious instructor, and to make for his support such private contract as he shall please.

Va. Const. art I, § 16 (emphasis added).

18

77, 84–85 (1975); *Reetz v. Bozanich*, 397 U.S. 82, 85 (1970)), the Court declines to

exercise supplemental jurisdiction over this claim and will dismiss it without prejudice.

*Id.* (dismissing a similar claim pursuant to 28 U.S.C. § 1367). Accordingly, Claim 9 will

be dismissed without prejudice.

### E.    Cruel and Unusual Punishment

In Claim 6, Richardson seeks to bring claims under the Eighth Amendment. To

state an Eighth Amendment claim, an inmate must allege facts showing "(1) that

objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that

subjectively the prison officials acted with a 'sufficiently culpable state of mind.'"

*Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501

U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest

that the deprivation complained of was extreme and amounted to more than the "routine

discomfort" that is "part of the penalty that criminal offenders pay for their offenses

against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme

deprivation, a prisoner must allege 'a serious or significant physical or emotional injury

resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634

(4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of

inadequate medical treatment under the Eighth Amendment, "the objective component is

satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "To establish that a

health care provider's actions constitute deliberate indifference to a serious medical need,

the treatment must be so grossly incompetent, inadequate, or excessive as to shock the

conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848,

851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)),

*overruled in part on other grounds by Farmer*, 511 U.S. at 837. Furthermore, in

evaluating a prisoner's complaint regarding medical care, the Court is mindful that

"society does not expect that prisoners will have unqualified access to health care" or to

the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S.

at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical

personnel with respect to a course of treatment is insufficient to state a cognizable

constitutional claim, much less to demonstrate deliberate indifference. *See Wright v.

Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6

(3d Cir. 1970)).

Richardson was transferred to DCC on April 2, 2019. (ECF No. 42, at 2.) The

majority of allegations pertaining to Richardson's Eighth Amendment claim pertain to his

incarceration at GCC, prior to his incarceration at DCC. Richardson fails to coherently

set forth any facts that indicate he faces a substantial risk of serious harm from his

conditions at DCC. Moreover, Richardson fails to allege facts that suggest Warden

Williams "subjectively recognized a substantial risk of harm" to Richardson's person and

that she "subjectively recognized that [her] actions were 'inappropriate in light of that

risk.'" *Parrish ex rel. Lee*, 372 F.3d at 303 (quoting *Rich*, 129 F.3d at 340 n.2).[7]

Accordingly, Claim 6, Richardson's Eighth Amendment claim, will be dismissed without prejudice.

**F.      Free Speech**

In Claim 8, Richardson contends that Defendants violated his right to free speech because of the failure to provide a wider range of telephonic services for someone with his disability.  Specifically, Richardson alleges that he "can only utilize the TDD[8] for collect calls, and is denied free conferencing services in accord with disability needs . . . or the use of a prepaid system afforded to non-disabled prisoners."  (ECF No. 42 ¶ 45.)

Richardson further contends that:

> by preventing plaintiff from communicating with people outside the prison
> with the same accommodations as other disabled prisoners. . . . [D]efendants
> continue to deny plaintiff access to telecommunication devices that would
> give him the ability to and opportunity to communicate with people outside
> of prison on an equal basis with deaf prisoners who utilize conferencing
> equipment and make free calls.

(*Id.* ¶ 124.)

---

[7] Richardson alleges that he

> met with Warden Williams on several occasions and requested that an interpreter
> be present at all meeting with staff, medical and otherwise.  Despite assurances no
> interpreter of Video Remote Interpreter (VRI) has been made available, and a report
> has been sent to . . . Warden Williams in this regard without redress or
> accommodation.

(ECF No. 42 ¶ 52.)

[8] "Telecommunication Device for the Deaf [which is] commonly referred to as 'TDD.'" *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1032 (E.D. Mich. 2005)

In the First Amendment context "prisoners have no *per se* constitutional right to use a telephone." *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000). "Instead, 'a prisoner's right to telephone access, if any, is subject to rational limitation based upon legitimate security and administrative interests of the penal institution.'" *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 555 (E.D. Va. 2006) (quoting *Arney v. Simmons*, 26 F. Supp. 2d 1288, 1293 (D. Kan. 1998)). Furthermore, the prisoner bears the burden in the first instance of proving the limitation on his right is not rationally related to legitimate penological objectives. *Strebe v. Kanode*, 783 F. App'x 285, 288 (4th Cir. 2019) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

It is plain from the Particularized Complaint that Richardson has access to a TDD telephone and numerous other ways of communicating with those outside of his prison.[9] *See id.* (noting as one factor in favor of upholding a regulation "whether alternative means of exercising the right exist that remain open to prison inmates" (quoting *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 213 (4th Cir. 2017))). Richardson's complaint appears to be that his right to free speech is violated because Defendants have not provided him with the full spectrum of telephonic options available to nonimpaired inmates, i.e., use of prepaid phone cards and free conferencing service. Given these

---

[9] In his Memorandum in Opposition, Richardson, for the first time, asserts that he cannot use the TDD phone because "it will not conform to the contrast and color which was recommended by a specialist . . . ." (ECF No. 64, at 67–68.) Richardson fails to demonstrate that new factual allegations such as this, asserted in a Memorandum in Opposition, can save his otherwise deficient claims. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (citations omitted) ("[I]t is black-letter law that . . . a court evaluating . . . . a motion to dismiss[] must focus only on the allegations in the pleadings.").

allegations, Richardson has failed to state a violation of his First Amendment right to free

speech. *Holloway v. Magness*, 666 F.3d 1076, 1079–80 (8th Cir. 2012) ("Just as [prison

officials] had no First Amendment obligation to provide any telephone service, [they] had

no obligation to provide that service at a particular cost to users."); *see also Valdez v.*

*Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002) (characterizing First Amendment right

as the right to communicate with persons outside prison walls and use of a telephone as

merely one "*means* of exercising that right"). Moreover, any restriction of that right

passes constitutional muster as Richardson has failed to allege facts in the Particularized

Complaint that indicate the limitation on that right is not related to legitimate penological

objectives.[10] *Strebe*, 783 F. App'x at 288 (citing *Overton*, 539 U.S. at 132). Claim 8 will

thus be dismissed without prejudice.

Richardson also seeks to bring a claim under Article I, Section 12 of the Virginia

Constitution, which states that, "any citizen may freely speak, write and publish his

sentiments on all subjects." Va. Const. art I, § 12. The Supreme Court of Virginia has

concluded, "Article I, § 12 of the Constitution of Virginia is coextensive with the free

speech provisions of the federal First Amendment." *Key v. Robertson*, 626 F. Supp. 2d

566, 583 (E.D. Va. 2009) (quoting *Elliott v. Commonwealth*, 593 S.E.2d 263, 269 (Va.

2004)). Thus, for the reasons discussed above, Richardson has failed to state a claim for

a violation of Article I, Section 12 of the Virginia Constitution. *McCaffrey v. Chapman*,

---

[10] For example, Richardson does not indicate that the TDD can easily be configured for use of prepaid phone cards or teleconferencing.

No. 1:17–cv–937 (AJT/IDD), 2017 WL 4553533, at *5 (E.D. Va. Oct. 12, 2017)

(observing that, "Plaintiff's state and federal constitutional free speech claims rise and

fall together"), *aff'd*, 921 F.3d 159 (4th Cir. 2019). Accordingly, Claim 8 will be

dismissed without prejudice.

### G. Denial of Access to the Courts

There are two types of denial-of-access to the courts claims:

> forward-looking claims alleging "that systemic official action frustrates a
> plaintiff or plaintiff class in preparing and filing suits at the present time,"
> and backward-looking claims alleging that an official action has "caused the
> loss or inadequate settlement of a meritorious case, the loss of an opportunity
> to sue, or the loss of an opportunity to seek some particular order of relief."

*Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher v. Harbury*,

536 U.S. 403, 413–14 (2002)). In either case, the right of access to the courts right "is

ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by

being shut out of court." *Christopher*, 536 U.S. at 415.

Here, from his sparse allegations, it appears Richardson is attempting to bring a

forward-looking claim. In order to plead a forward-looking claim, the plaintiff must

allege "[1] an arguable underlying claim and [2] present foreclosure of a meaningful

opportunity to pursue that claim." *Broudy v. Mather*, 460 F.3d 106, 121 (D.C. Cir. 2006).

With respect to the first element, "the named plaintiff must identify a 'nonfrivolous,'

'arguable' underlying claim." *Christopher*, 536 U.S. at 415 (quoting *Lewis v. Casey*, 518

U.S. 343, 353 & n.3 (1996)). With respect to second element, the plaintiff must show

that he is:

> "presently den[ied] an opportunity to litigate." [*Christopher*], 536 U.S. at
> 413. Such plaintiffs must show that a meaningful opportunity to pursue their
> underlying claims was "completely foreclosed." *Harbury*[ *v. Deutch*, 233
> F.3d 596, 609 (D.C. Cir. 2000); *Harbury v. Deutch*, 244 F.3d 956, 957 (D.C.
> Cir. 2001)]. In the prison context, for example, prisoners bringing a forward-
> looking claim must show an "actual injury to [their] litigation." *Crawford–
> El v. Britton*, 951 F.2d 1314, 1321 (D.C. Cir. 1991). No such injury exists if
> a plaintiff can still meaningfully press his underlying claims because the
> plaintiff is not being "presently den[ied] an opportunity" to meaningfully
> litigate, even in "the short term." [*Christopher*], 536 U.S. at 413.

*Broudy*, 460 F.3d at 121 (first, fourth, and fifth alterations in original).

Richardson fails to allege facts that plausibly suggest he is presently denied a

meaningful opportunity to litigate any claim. *Id.* First, he simply alleges what he

believes are deficiencies at DCC for a person with his limited vision. (*See* ECF

No. 42 ¶¶ 136–37.) But, Richardson fails to articulate, and it certainly is belied by the

record, that these shortcomings have completely foreclosed his ability to litigate any

claim. *See Broudy*, 460 F.3d at 121.

Next, Richardson suggests that he has been denied access to the courts by the

grievance system, which is not accessible for a person like him with limited vision. The

pertinent statute provides: "No action shall be brought with respect to prison conditions

under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are *available*

are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). As explained by the United

States Court of Appeals for the Fourth Circuit, the lone exception to the PLRA's

exhaustion requirement is found in the text itself: "A prisoner need not exhaust remedies

if they are not 'available.'"   *Germain v. Shearin*, 653 F. App'x 231, 232 (4th Cir. 2016)

(quoting *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016)).   Thus, to the extent that the

grievance process is not available to him by virtue of his disabilities and Defendants fail

to offer appropriate accommodations, he would be excused from his exhausting his

administrative remedies.   Richardson has failed to allege facts that indicate the existence

of "an arguable underlying claim and present foreclosure of a meaningful opportunity to

pursue that claim."   *Broudy*, 460 F.3d at 121.   Accordingly, Claim 11 will be dismissed

without prejudice.

## V.   CONCLUSION

Accordingly, Defendants' Partial Motion to Dismiss, or in the Alternative, Motion

to Sever (ECF No. 47) will be granted in part and denied in part.   The following claims

remain before the Court:

| | |
|---|---|
| Claim 1 | While incarcerated at DCC, the VDOC violated Richardson's rights under Title II of the ADA. |
| Claim 2 | While incarcerated at DCC, the VDOC violated Richardson's rights under the Rehabilitation Act. |
| Claim 3 | While incarcerated at DCC, the VDOC and Defendant Williams violated Richardson's rights under the VDA. |
| Claim 5 | While incarcerated at DCC, the VDOC and Defendant Williams violated Richardson's rights under RLUIPA when they prevented him from wearing a religious head covering in certain areas of the prison. |
| Claim 7 | While incarcerated at DCC, the VDOC and Defendant Williams violated Richardson's free exercise rights under the First |

Amendment when they prevented him from wearing a religious head covering in certain areas of the prison.

Additionally, Richardson's demand for monetary damages in Claim 1 is dismissed without prejudice. Richardson's demand for monetary damages in Claims 5 and 7 against Defendant Williams in her official capacity will be dismissed. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Any party wishing to file a motion for summary judgment must do so within sixty (60) days of the date of entry hereof.

The Clerk of the Court is DIRECTED to send a copy of the Memorandum Order to Richardson and counsel of record.

It is so ORDERED.

/s/
Henry E. Hudson
Senior United States District Judge

Date: **August 17, 2020**
Richmond, Virginia

28