IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID A. RICHARDSON,

    Plaintiff,

v.                                                 Civil Action No. 3:18cv23

HAROLD CLARKE, *et al.*

    Defendants.

## AFFIDAVIT

Commonwealth of Virginia, County of Southampton, to-wit:

T. WILLIAMS, first being duly sworn, states as follows:

1. I am the Warden at Deerfield Correctional Center ("Deerfield"), a Virginia Department of Corrections ("VDOC") facility.

2. I base the information contained in this affidavit on personal knowledge and records maintained in the regular and ordinary course of business.

3. I understand that Inmate David Richardson, #1058541 currently has a federal lawsuit pending in which he claims that I and VDOC have violated his religious rights and have failed to adequately accommodate his disabilities.

4. Currently, VDOC OP 802.1, Offender Property, states that it is at the discretion of the facility to determine the times, locations, and circumstances in which personal clothing may be worn. This includes religious head coverings. A copy of OP 802.1 is attached as Enclosure A.

5. I understand that Inmate Richardson claims that it is sincere religious belief that he wear his kufi, a religious head covering, in all areas of Deerfield.

1

6. Currently at Deerfield and pursuant to my direction, inmates may wear religious head coverings – such as kufis – in the same manner as non-religious head coverings.

7. Inmates may wear religious head coverings in their housing units or outside of their housing units.

8. Once an inmate enters certain areas of the prison (such as the dining hall, the visiting room, the administrative building, and designated program locations), he must remove his head covering. This includes religious head coverings.

9. Staff also must remove any head coverings when they enter these areas of the facility.

10. Inmates may wear their religious head coverings during an approved religious activity regardless of the location. These activities and locations are specified in the Deerfield Activity Schedule, which is available to inmates.

11. The reasons for this decision are multi-fold.

12. First, head coverings can be used to conceal contraband, including notes, drugs, or small weapons, such as razors. Requiring inmates to remove their head coverings prior to entering certain buildings reduces the risk that contraband could be hidden inside of a head covering.

13. Second, head coverings can obscure a person's identity. While this is less of a concern when an inmate is in his designated housing area, it becomes much more difficult to identify people on video surveillance systems when they are in large rooms or mixing with other inmates from other housing areas, such as during meal times or when inmates are visiting administrative buildings. If inmates or staff are wearing hats inside of a building with a high volume of diverse traffic (meaning many inmates, staff, or visitors) it becomes more difficult for security staff to identify someone from a distance or on a surveillance system.

2

14. Third, many inmates have ties to security threat groups or "gangs" while incarcerated. These groups will frequently attempt to identify themselves to other members of their group by dressing in a distinctive manner, such as by wearing a head covering or a specific type of garment in a particular way. Inmates have used religious objects and religious affiliations to disguise their unlawful activity that is not religious in nature. Restrictions on the times and places that inmates may wear head coverings reduces the risk that inmates will attempt to identify themselves as being affiliated with these groups when they are co-mingling with inmates from other housing units.

15. I understand that Richardson wants to wear his religious head covering when he visits the law library and other areas of the prison.

16. While it may not seem like a burden to allow only Richardson to wear a head covering as an accommodation, it is my experience that once Richardson is permitted to do so, other inmates will also demand permission to wear head coverings. This would lead to many inmates wearing items that could obscure their identities. Additionally, it would be possible for inmates, once inside of a building, to swap head coverings to intentionally make it more difficult to identify them or track their movements from a distance or via a video surveillance system.

17. If Richardson wanted to seek a special accommodation from VDOC to wear his religious head covering outside of the times and locations prescribed, he should have submitted a request to VDOC's Faith Review Committee ("FRC").

18. This is the proper process for an inmate who seeks a religious accommodation.

19. Any requests from an inmate who wants a particular accommodation first come through my office.

3

20. To the best of my knowledge, Richardson never submitted a request to the FRC to ask for permission to wear his religious head covering in addition to the times he is already permitted to do so.

21. On October 22, 2020, Chief of Corrections Operations A. David Robinson issued a memorandum on this exact issue and alerting staff and inmates of a forthcoming change in the religious head covering policy that would be effective throughout VDOC, not just at Deerfield.

22. A copy of that memorandum is attached as Enclosure B.

23. Pursuant to that memorandum, effective December 1, 2020, inmates may wear religious and state-issued head coverings anywhere inside the facility, but must remove the head covering at the request of security staff.

24. There are some other requirements for religious head coverings outlined in the memorandum, but I understand those requirements are not at issue in Richardson's case.

25. Effective December 1, 2020 at Deerfield, in compliance with this memorandum, there will no longer be a restriction on Richardson's ability to wear his religious head covering in all areas of the facility, subject to removal of the head covering at the specific request of security staff and other provisions of the memorandum.

4

T. WILLIAMS

_____
Affiant

Sworn and subscribed to, before me, a Notary Public, in and for the State of Virginia, County of Southampton, this 2nd day of November, 2020.

_____
Notary Public
5/31/22

My commission expires:

MICHELLE H. TILLETT
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7044785
My Commission Expires 5/31/22

5

# COMMONWEALTH of VIRGINIA



Tammy B. Williams
Warden

*Department of Corrections*
*Eastern Region*
**DEERFIELD CORRECTIONAL CENTER**

21360 Deerfield Dr.
Capron, VA 23829
(434) 658-4368

October 4, 2019

## MEMORANDUM

TO:        Offender Population, Deerfield Correctional Complex

FROM:    T.B. Williams, Warden

Subject:    Authorized Head Covering

Operating Procedure 802.1, Offender Property states that it is at the discretion of the facility to determine the times, locations and circumstances in which personal clothing may be worn to include head coverings. For the purpose of this memorandum, head coverings will include blaze orange caps (baseball, stocking, or watch), wave caps, sweatbands, and religious head coverings.

Effective immediately, the following guidelines will be enforced regarding the wearing of head coverings:

- Offenders will be permitted to wear wave caps only while on the living units.
- Blaze orange caps (baseball, stocking, or watch) can be worn outside of the living units; however, they must be removed once the offenders reach their destination to include the visiting room, the dining hall, administrative buildings, and designated program locations.
- In accordance with 841.3, religious head coverings can be worn in the same manner as non-religious head coverings with the exception of the Fez head covering which can only be worn in the housing units and religious activities. Offenders can wear religious head coverings while participating in approved religious activity regardless of the location. These religious activities and locations are specified in the DFCC Activity Schedule.
- Athletic sweat bands are to be worn in the housing units or during recreational activities only. They are not to be worn outside of the living units unless going to the Gym or Recreation Yard.

The information contained in this memorandum will supersede all previous guidance provided on this subject to include the Offender Orientation Handbook.

Your compliance with this memorandum is expected.

cc:    Assistant Warden J. Halsey-Harris
Assistant Warden JD Oates
Major E. Hawkins
CHAP C. Smith
Watch Commanders
Unit Managers

**ENCLOSURE A**

date, volume/issue number or other identifier, copyright notice, and publisher address in the publication. All other catalogs and brochures will be treated as general correspondence and handled in accordance with Operating Procedure 803.1, *Offender Correspondence*.

    c. Publications that have been altered are considered contraband and must be disposed of immediately.

3. There is no limit on personal mail, newspaper and magazine clippings, or legal materials an offender may possess as long as they can be stored in the offender's designated locker or cabinet. Reasonable quantities of legal materials may be placed in storage dependent on facility resources.

4. Sound producing equipment (radios, media devices, tape/CD players, and televisions) must be played through earphones at all times. Violation of this rule may result in confiscation of all such equipment and forfeiture of the privilege of possessing audio/video equipment.

5. Personal clothing must be purchased through the commissary

    a. Offender personal clothing must be the appropriate size and fit properly as determined by facility staff; pants and shirts should not fit too tightly or too loosely.

    b. Personal clothing will substitute for state issue clothing except for outside workers who should be issued an additional two state clothing sets (blue with orange strip pants).

    c. ==Facility rules should specify times, locations, and circumstances in which personal clothing including hats, caps, and other authorized head coverings may be worn.==

    d. Personal clothing should not be laundered or repaired at state expense. Cleaning and repair of personal clothing is the responsibility of the owner.

        i. Facilities may provide washers and dryers (paid for from Commissary profits) for offenders to use to launder their personal clothing.

        ii. Offenders may also hand wash their personal items.

        iii. Offender laundry workers should not launder personal property items unless personal items are sent to a central laundry area.

6. At the discretion of the facility, offenders may retain certain personal hygiene items that were previously available but may not purchase any new or replacement like items.

7. Only jewelry authorized in the appropriate *Authorized Personal Property Matrix* is allowed.

    a. No item of jewelry may be in an offender's possession if it contains stones or gems regardless of value.

    b. The Facility Unit Head may approve, on a case-by-case basis, wedding bands/sets that do not comply with these criteria. The value/price of wedding bands/sets is not specified; however, DOC liability is limited to $50.

    c. Jewelry should not be characterized as to type of metal or value. For example, a watch should be described as a "yellow or white colored metal watch," not a "gold watch."

8. Virginia Correctional Enterprises is the DOC's only procurement source for prescription eyewear.

    a. Offenders will not be allowed to purchase personal non-VCE eyeglass frames.

    b. Offenders who currently have personal frames (metal frames acceptable for Security Level W-3 institutions only), contact lenses, and tinted lenses will be allowed to keep them until the next eye exam or prescription change. When replacement is necessary, state frames must be obtained.

9. Only medications and health items issued through the facility Medical Department or sold in the commissary, including non-prescription glasses, are permitted.

    a. Offenders may be allowed to retain medically necessary prosthetic devices in their possession when received into the DOC, as approved by the Medical Authority.

    b. The DOC liability for privately purchased glasses/lenses or any other prosthetic device will be limited to the repair of the item or the replacement of the item with a state-issue prosthetic device.

    c. DOC owned crutches, canes, wheelchairs, braces, etc. must be returned to the Medical

Department when no longer prescribed or medically necessary.

10. All religious personal property items, other than publications, approved by the *Faith Review Committee* for individual offender possession are listed on the *Approved Religious Items* attachment to Operating Procedure 841.3, *Offender Religious Programs*.

   a. Religious personal property items must be purchased through the facility commissary; offender requests for religious items, not listed on *Approved Religious Items*, must be submitted to the Facility Unit Head on a *Request for Approval of Faith Object* 841_F1.

      i. It is the offender's responsibility to complete the *Request for Approval of Faith Object* 841_F1 and furnish necessary information and appropriate documentation to support the *Request*.

      ii. The Facility Unit Head will forward the completed *Request* to the *Faith Review Committee* who will forward their recommendations to the Chief of Corrections Operations or designee.

      iii. The Chief of Corrections Operations or their designee will review and make a final decision to approve or disapprove an item.

   b. Prayer rugs must be stored in storage space provided when not in use and must not to be hung on walls or continuously maintained on the floor.

   c. ==Religious hat/head covering - No face coverage; maximum length to shoulder; size and type consistent with security concerns at the facility; subject to search at any time. Religious head coverings can be worn in the same manner (time, locations, and circumstances) as non-religious head coverings unless designated otherwise on the *Approved Religious Items* list.==

   d. Previously approved kufis, yarmulkes, wave caps, baseball and stocking caps may be retained if they differ in color from the current standards, but new orders must conform to current standards.

   e. Worship/ Prayer beads will not be worn as a necklace; violation of this requirement can result in confiscation of the religious item.

11. Hobby, craft, and art supplies/materials may be permitted subject to facility procedures and Operating Procedure 841.6, *Recreation Programs*.

   a. Only those items listed on the *Approved Arts and Crafts Items* attachment to Operating Procedure 841.6, *Recreations Programs*, for the institution's assigned Security Level are authorized for offender possession.

   b. Certain items may not be allowed in offender living areas. Some facilities may require hobby and craft supplies to be stored in a hobby shop.

   c. Each facility may establish limits on hobby, craft, and art items based on available storage and work space.

   d. Certain items may not be allowed at all facilities and the offender may be required to send them out or otherwise dispose of them when transferred.

12. Facilities that do not provide electrical service in offender living areas may restrict electrical or electronic possessions to battery operated items.

   a. Availability of electrical and electronic items may be limited to facilities that provide electrical service in offender living areas.

   b. All electrical and electronic equipment must be purchased from the commissary in accordance with the approved Commissary List.

13. All property in the possession of an offender must be stored in a secured locker(s) or other container(s) assigned to that offender by the facility. (5-ACI-2E-10; 4-4164; 4-ACRS-7D-13)

   a. Each facility will establish rules regulating the storage of personal property in the living area.

   b. Personal property must be properly stored so that it will not interfere with sanitation or insect and rodent control and will not violate fire or other safety regulations.

   c. Property that exceeds the capacity of the designated container(s) must be disposed of in accordance with this operating procedure.

14. Repair, cleaning, maintenance, and secure storage of personal property are the responsibility of the

# COMMONWEALTH of VIRGINIA
## Department of Corrections

HAROLD W. CLARKE
DIRECTOR

P. O. BOX 26963
RICHMOND, VIRGINIA 23261
(804) 674-3000

October 22, 2020

## MEMORANDUM

To: Wardens and Superintendents

From: A. David Robinson 
Chief of Corrections Operations

Subject: Wearing of Inmate Hat and Head Covering

The following change will affect Operating Procedure 841.3, Attachment 3, *Approved Religious Items* and 802.1, *Offender Personal Property*.

Effective December 1, 2020, inmate hat and head covering (state issued or religious) shall be worn in the following manner at all VADOC facilities:

- Inmate may wear religious and state issued head coverings anywhere inside the facility
- Inmate must remove head coverings for search purposes when requested by security personnel
- Inmate may not wear head coverings, state issued or religious, in industrial work assignments as it poses a safety hazard
- Inmate may not wear any head coverings (state issued or religious) on external transportation
- Inmate must wear state issued head coverings to outside work assignments
- No head coverings will cover the face
- Maximum size for Hijab is 48" x 48". May receive a donated Hijab from MCSVA or may order it through Keefe
- If the inmate refuses to comply with orders to remove headgear for search purposes, they are subject to being charged under 861.1

Post the provided inmate memo in all housing units. If you have any questions, please contact Melissa Welch at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or Bernard Morris, Religious Advisor, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

cc: Harold Clarke, Director
Regional Operations Chiefs
Regional Administrators
Randall Mathena
Melissa Welch
Diane Abato

Chief of Corrections Operations Memorandum #149-2020

**ENCLOSURE B**