**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

DAVID A. RICHARDSON,
    Plaintiff,

             v.                          Civil Action No. 3:18-cv-00023 (HEH)

HAROLD W. CLARKE, *et al.,*
    Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on two letters filed by Plaintiff David A. Richardson ("Plaintiff" or "Richardson"), a *pro se* inmate, which the Court previously construed as a motion to enforce the Settlement Agreement (ECF No. 138). (ECF Nos. 136, 137, collectively the "Motion to Enforce".) The matter is now ripe for disposition. The Court DENIES Richardson's Motion for Settlement Conference: or Plenary Hearing (ECF No. 155) because the materials before it adequately present the facts and legal contentions, and neither a settlement conference nor hearing would aid the decisional process.

The Court has considered the Motion to Enforce, the parties' Settlement Agreement filed under seal (ECF No. 140), Defendants' Response (ECF No. 139), and Plaintiff's Reply (ECF No. 149). Having reviewed the submissions, the Court concludes that Defendants have not materially breached the Settlement Agreement and that they have made reasonable and appropriate efforts to comply with its terms following Plaintiff's transfer to State Farm Correctional Center. Accordingly, the Court DENIES Plaintiff's Motion to Enforce (ECF Nos. 136, 137).

## I.    JURISDICTION

The Court possesses jurisdiction over the Settlement Agreement based on the terms of the final judgment order and *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The parties' Settlement Agreement provides:

> The Parties agree that U.S. Magistrate Judge Mark R. Colombell retains jurisdiction and authority to resolve any disputes concerning this Agreement. The Parties further agree that any resolution determined by Judge Colombell shall be conclusive and that Judge Colombell may award the prevailing party its costs, including reasonable attorney's fees, consistent with the prevailing law.

(ECF No. 140 at 3.) The Dismissal Order entered on May 8, 2024 dismissed the case with prejudice but retained "jurisdiction for the sole purpose of enforcing the terms of the settlement agreement pursuant to *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994). Therefore, the Court retains jurisdiction to resolve the disputes alleged in Richardson's Motion to Enforce.

## II.    RELEVANT FACTS

The parties executed a Settlement Agreement on April 29, 2024, after extensive litigation regarding Richardson's need for accommodations at Beaumont Correctional Center arising from his combined hearing and vision impairments. (ECF No. 140.) The Settlement Agreement required VDOC to provide Richardson with accommodations designed to ensure his meaningful participation in prison programs and services. *Id.* Among other things, VDOC agreed to provide Richardson additional time to utilize the law library, to schedule American Sign Language interpreters for all significant communications, to provide him with documents and notices in a specific color and font combination recommended by a vision specialist, and to ensure that medical records, legal documents, and JPay emails were uploaded for Richardson's review in an accessible

format and in a timely manner. (*Id.* at 1-3.[1]) While many of these provisions were written specifically with Beaumont Correctional Center in mind, the Settlement Agreement expressly provided that if Plaintiff were transferred to another VDOC facility, "any and all appropriate efforts shall be made by VDOC to provide these or similar disability accommodations at any such facility." (ECF No. 140 at 3.)

Richardson is presently housed at State Farm Correctional Center. (ECF No. 136.) In his motion and subsequent reply, he asserts that Defendants have failed to comply with multiple provisions of the Settlement Agreement in several respects. (ECF Nos. 136, 137, 149.) He contends that although the law library is normally open for twenty-two hours each week, staffing shortages, prison lockdowns, and the scheduling of his medical, counseling, and therapy appointments during library hours effectively deprives him of the agreed-upon access. (ECF No. 137 at 3-6.)  He adds that he has "not had benefits of any library services; the ability to read books since 2016" nor has he been provided with eyeglasses despite "repeated recommendations." (ECF No. 137 at 6.) Richardson further asserts that interpreters "have not continued to be (nor have they ever been) scheduled for lengthy, important, and significant communications" despite his requests, and he alleges that he has "had to forego an interpreter for weeks at a time." (ECF No. 137 at 6.) Richardson also claims that he relies on fellow inmates to assist in sending and receiving mail, which results in errors and violates his privacy in communications. (ECF No. 137 at 3-4.) He maintains that notices, grievances, and forms are not consistently provided in the required visual format, that his JPay messages are printed and scanned in ways that render them unreadable, that his medical records are not uploaded within the fourteen-day deadline, and that the provision of

---

[1] The Court employs the pagination utilized by the CM/ECF system.

envelopes and forms has been inconsistent. (ECF No. 137 at 1-5.) In his view, these practices represent systemic failures to honor the plain terms of the Settlement Agreement.

Defendants vigorously dispute these allegations. They argue that Richardson has been given "unlimited" access to the law library for the entirety of the hours it is open, that he meets twice weekly with counselors and interpreters, and that medical appointments are scheduled to coincide with interpreter availability. (ECF No. 139 at 5.) Defendants support their position with sworn testimony from M. Haislip, Operations Manager at State Farm Correctional Center, and B. Marano, VDOC's Statewide ADA Coordinator. (ECF No. 139-1, 139-2.)

In her affidavit, Ms. Haislip explained that Richardson has been granted access to the law library for all twenty-two hours it is open each week, rather than being capped at a lower allotment of time. (ECF No. 139-1 ¶ 7 ("Haislip Aff.").) She further attested that interpreters are scheduled to meet with Richardson twice weekly for two-hour sessions with his counselor and an ASL interpreter, and that his offsite medical appointments are set to coincide with interpreter availability. (*Id.* ¶ 8-9.) Ms. Haislip also confirmed that staff regularly upload notices, grievances, medical records, and JPay communications to Richardson's law library account, and that envelopes and labels are printed for him so that he can meaningfully participate in institutional correspondence. (*Id.* ¶ 11-13.) She notes that "[a]ll documents that are uploaded, or attempted to be uploaded to Richardson's Law Library account are also printed for him twice a week. . . . [He] is able to take these documents with him to his weekly meetings with his counselor and the ASL interpreter to have read [to him]." (*Id.* ¶ 13.)

While acknowledging that Richardson has expressed dissatisfaction with some of these accommodations, Ms. Haislip stated that State Farm has worked diligently to carry out the Settlement Agreement to the best of its abilities. Indeed, "State Farm has now established a

4

protocol for having Richardson's JPAY messages uploaded to his Law Library account. From [her] understanding, this has never been done for any inmate at State Farm before." (*Id.* ¶ 15.) She affirmed that the process by which this is done involves multiple steps undertaken by State Farm's Intelligence Department to ensure privacy and security. (*Id.* ¶ 17.) She denied that staff failed to print envelopes for him, as his counselor regularly prints "sticky labels" for Richardson to attach to envelopes, and that corrective action was taken to assist one of his previous counselors with the process. (*Id.* ¶ 18-19.) With regard to Richardson's complaint that he was denied announcements otherwise provided to the general population, Ms. Haislip attested that State Farm staff "regularly make verbal announcements for count time and other security protocols in the housing units," and that Plaintiff's complaints with regard to this are unfounded. (*Id.* ¶ 20.) Finally, Ms. Haislip explained that State Farm recently purchased a "MagniLink" device specifically to assist Mr. Richardson, and that State Farm planned to train him on how to use the device. (*Id.* ¶ 21.)

Mr. Marano's declaration provided further detail on VDOC's efforts to fulfill the terms of the Settlement Agreement. (ECF No. 139-2 ("Marano Decl.").) He recounted that, after consulting with the manufacturer, VDOC purchased a custom-made "MagniLink" assistive device from Sweden at a cost of approximately $4,400. (ECF No. 139-2 ¶ 5-6.) This device was specifically configured to allow Richardson to adjust color contrasts and magnification to match the visual needs identified in his prior low-vision evaluation. (*Id.* ¶ 7-8.) Mr. Marano explained that the device enables Richardson to place both physical documents and his JPay tablet under a scanner so that the contents can be displayed in an accessible format, magnified, and even read aloud if desired. (*Id.* ¶ 10.) In his view, the MagniLink device not only satisfies but exceeds VDOC's obligations under the Settlement Agreement by providing a flexible tool that addresses many of the very concerns Richardson continues to raise. Altogether, VDOC asserts that these efforts

constitute substantial compliance with the Settlement Agreement and satisfy the requirement to make "all appropriate efforts" at the facility where Plaintiff is now confined. (ECF No. 139 at 8-9.)

In his Reply, Plaintiff strongly disagrees with Defendants' assertion that State Farm has made "[a]ny and all appropriate efforts" to comply with the Settlement Agreement. (ECF No. 149 at 2-3.) Plaintiff reiterates many of his prior allegations detailing State Farm's shortcomings, including how other appointments interfere with his ability to utilize the Law Library, (*id.* at 8-9), how his time with ASL interpreters is insufficient, (*id.* at 9-13), and how he has difficulty receiving documents and other communications in a timely fashion and readable format (*id*. at 14-16). With regard to meeting with an ASL interpreter, Richardson concedes that he

> meets twice weekly for one hour and forty minutes (as processing into the facility takes approximately twenty minutes) for meetings with a wide range of staff members. An ASL Interpreter has often been only available for one hour and forty minutes a week to address matters of concerns [he] has had or currently needs to discuss with staff. When the interpreters have been available twice a week, it means communications are limited to three hours and ten minutes weekly.

(*Id.* at 9-10.) He claims that this time is insufficient and violates the Settlement Agreement. (*Id.* at 10.) He also contends that an ASL interpreter must be provided any time he approaches senior staff to "engage in communications" in accordance with the provision of the Settlement Agreement requiring an interpreter to be present for all "significant communications." (*Id.* at 10.) In support, he alleges various instances in which he requested an ASL interpreter for his meetings with VDOC officials which were either ignored or not "facilitated in a timely manner," and that his meetings with senior officials have been impractical due to scheduling errors or a lack of privacy, all of which violates the Settlement Agreement. (*Id.* at 11.) Further, Plaintiff specifically addresses the custom-made MagniLink tablet that State Farm purchased for him and reports that the font size it

displays is too large, such that it does not comply with the Settlement Agreement's Recommended Visual Combination.[2] (*Id.* at 4.)

Attached to Plaintiff's Reply are copies of grievances and grievance appeals he filed at State Farm, all of which have been deemed either unfounded or resolvable, as well as declarations from himself and other inmates.[3] (ECF No. 149, Attachments 1-31.[4]) In Richardson's sworn declaration, he summarizes written complaints he filed regarding the unavailability of interpreters at his medical appointments. (ECF No. 149-20.) For instance, on February 20, 2025, VDOC scheduled to have an interpreter present on a date which coincided with a medical appointment, and "no alternative date was scheduled[,]" which allegedly delayed Richardson's ability to submit "time sensitive documents." (*Id.* at 12.) In another instance, on March 27, 2025, Plaintiff returned to State Farm from having prostate surgery at VCU. (*Id.* at 7.) Upon entering the unit, he "was met by Dr. Akinydola who began asking [him] questions with regard to [his] medical conditions and needs," but Richardson "repeatedly told the doctor that [he] need[s] an interpreter to communicate with him effectively." (*Id.* at 7-8.)

---

[2] The Settlement Agreement provides notes that "Richardson's Law Library account has been programmed to provide documents, files, etc. in the font and color combination recommended in the 2021 Evaluation by the Medarva Low Vision Rehabilitation Center (cyan-green text in 14-point font against a navy blue background) (hereinafter the 'Recommended Visual Combination')." (ECF No. 140 at 2.)

[3] The Court notes that the ten attached declarations from inmates Larry T. Crotis, Ashby Alderman, Derrick F. Satter, Michael Taylor, Charles Early, Alphonso L. Habeeb Esa Brown Jr., Barnard King, Jammie Duncan, Sam Earhart, Robert Freeman, and Brandon M. Gray are all identical in language and substance. (ECF No. 149, Attachments 21-31.)

[4] In addition to the declarations, grievances, and appeals attached to his Reply, Richardson included documents which purport to be medical records or other institutional records but appear indecipherable. The Court will take no action as to these documents, which are docketed as ECF Nos. 149-13, 149-14, and 149-16.

In addition to his grievances and appeals about interpreter availability, Richardson also filed complaints regarding the time he was allowed to use the law library, the readability of documents provided to him, and instances in which he claims medical professionals came to deliver medications without arranging for an interpreter to be present for those interactions. (ECF No. 149, Attachments 2-6.)

Finally, the Court notes that Plaintiff filed miscellaneous notices throughout the time that the Motion to Enforce was pending. (*See* ECF Nos. 144, 151.) Local Civil Rule 7 governs pleadings and motions filed in the Eastern District of Virginia. According to Local Rule 7(F):

> All motions, unless otherwise directed by the Court and except as noted herein below in subsection 7(F)(2), shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies. Unless otherwise directed by the Court, the opposing party shall file a response brief and such supporting documents as are appropriate, within fourteen (14) calendar days after service and the moving party may file a reply brief within six (6) calendar days after the service of the opposing party's response brief. The fourteen (14) and six (6) calendar day periods for response and reply briefs shall apply without regard to, and are not expanded by, the mode of service used for those briefs, notwithstanding the provisions of Fed. R. Civ. P. 6(d). No further briefs or written communications may be filed without first obtaining leave of Court.

Local Civ. R. 7(F)(1). Here, the notices (ECF Nos. 144, 151) are exclusive of Richardson's supporting memorandum and Reply, and he has not moved for leave to file additional written communications. As such, the Court will take no action regarding these notices, nor will it consider Defendants' Response to these notices. (ECF No. 152.)

### III.    LEGAL STANDARD

As a threshold matter, *pro se* pleadings are required to be "liberally construed" and "must be held to less stringent standards that formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). However, "[p]rinciples requiring generous construction of *pro se*

complaints are not . . . without limits." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction "does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." *James v. Wright*, No. 2:20-cv-4228-TMC-SVH, 2020 WL 8083879, at *1 (D.S.C. Dec. 11, 2020) (citing *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990)). Because Plaintiff is proceeding *pro se*, the Court will assess the Motion to Enforce in conformance with these requirements.

The Fourth Circuit utilizes a two-step process for enforcing settlement agreements. *Moore v. Beaufort County, N.C.*, 936 F.2d 159, 162 (4th Cir. 1991). First, "the court should ascertain whether the parties have in fact agreed to settle the case," and, if they have, "then the court must discern the terms of that settlement." *Id.* If a court determines that the parties entered into a binding settlement agreement, it may enforce the agreement without the need for a hearing. *Cosby v. Huntington Ingalls, Inc.*, 2018 U.S. Dist. LEXIS 51229, 2018 WL 1511735, at *2 (E.D. Va. Mar. 27, 2018) (citing *Hensley*, 277 F.3d at 540).

A settlement agreement is a contract, and therefore standard contract principles apply when considering a motion to enforce a settlement agreement. *Bradley v. Am. Household Inc.*, 378 F.3d 373, 380 (4th Cir. 2004). Here, the parties do not dispute that a settlement agreement has been reached: rather, they disagree as to whether VDOC materially breached its terms. Having found that the parties entered into a complete and enforceable agreement on April 29, 2024, the Court must simply discern the terms of the Settlement Agreement in accordance with normal principles of contract interpretation. *Moore*, 936 F.2d at 159.

To sustain a breach of contract claim under Virginia law, Richardson must demonstrate: "(1) a legally enforceable obligation or agreement; (2) the opposing party's violation or breach of

that obligation or agreement; and (3) injury or damages caused by that breach." *Design & Prod., Inc. v. Am. Exhibitions, Inc.*, 820 F. Supp. 2d 727, 736 (E.D. Va. 2011) (citing *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004)). "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Mulugeta v. Ademachew*, 407 F. Supp. 3d 569, 592 (E.D. Va. 2019) (internal citation omitted).

However, if a defendant has substantially complied with the terms of the contract, "contractual shortcomings are by definition immaterial." *Scott v. Clarke*, 355 F. Supp. 3d 472, 504 (W.D.Va. 2019). Substantial compliance is the "inverse of the proposition that a breach of the contract must be material or significant . . . ." *Culpeper Reg'l Hosp. v. Jones*, 64 Va. App. 207, 214, 767 S.E.2d 236 (Va. Ct. App. 2015) (internal citation omitted); *e.g., Bile v. RREMC, LLC*, No. 3:15CV051, 2016 WL 4487864, at *6 (E.D. Va. Aug. 24, 2016). "The doctrine of substantial performance does not constitute a complete defense to liability for breach of contract, but is designed rather to prevent total forfeiture by a contracting party who is guilty of only trivial breaches of contract." *Ballou v. Basic Const. Co.*, 407 F.2d 1137, 1140 (4th Cir. 1969).

## IV.    ANALYSIS

A settlement agreement, like any contract, must be construed as written. *See Bradley v. Am. Household Inc.*, 378 F.3d 373, 380 (4th Cir. 2004). The Settlement Agreement here explicitly contemplated the possibility of Plaintiff's transfer and required VDOC to make "appropriate efforts" to provide the same or similar accommodations at another facility. (ECF No. 140 at 3.) That provision necessarily affords some flexibility, and the Court will review Richardson's claims consistent with the parties' understanding that "any and all appropriate efforts shall be made by

VDOC to provide these or similar disability accommodations" at State Farm Correctional Center. (ECF No. 140 at 3.)

Additionally, Virginia law does not demand strict performance in all contract cases; rather, a Court must determine whether the breach is so material as to defeat an essential purpose of the contract. *See Scott v. Clarke, et al.*, 355 F. Supp. 3d 472, 504 (W.D. Va. 2019). In other words, the Court must determine whether VDOC materially breached the Settlement Agreement or substantially complied with its material terms. *See id.* (applying substantial compliance doctrine to the enforcement of a settlement agreement involving medical care for plaintiff inmates). The record demonstrates that VDOC has substantially complied with the Settlement Agreement's provisions, which the Court will now address in turn.

> 1.  *VDOC Did Not Breach the Settlement Agreement's Provision Ensuring Richardson Has Additional Time to Utilize the Law Library.*

Richardson claims that he is "unable to obtain the stipulated twenty (20) hours a week in the State Farm Correctional Center Law Library" due to conflicting schedules with his medical appointments, staff shortages, or prison lockdowns, in violation of Paragraph 1(b)(ii). (ECF Nos. 136 at 5, 137 at 4.) However, the law library provision, by its terms, set an "objective" of twenty hours per week, not an absolute guarantee. (ECF No. 140 at 2.) Nonetheless, the record reflects that Plaintiff has access to the law library throughout its regular hours, and in instances when he filed grievances for not having access, VDOC investigated and determined that Richardson's complaints were unfounded. For example, Richardson complained on at least two occasions that he was denied a full twenty hours per week in the law library in violation of the Settlement Agreement. (ECF Nos. 149-1, 149-3.) However, these grievances were held to be unfounded because the library was closed or otherwise limited due to a prison-wide security lockdown during

the week of November 11-15 and state-sanctioned holidays during November 25-29, 2024. (ECF Nos. 149-1 at 2, 149-3 at 3.)

Moreover, Richardson's own records of the weekly total hours he spent in the law library from October 21, 2024 to March 14, 2025 purportedly show that he continued to use the library at times that did not also coincide with his medical appointments or weekly meetings with interpreters. (ECF No. 149-1 at 9-17.) Nevertheless, he noted that "over the past approximate six (6) months [he has] reached the approximate of twenty (20) hours only six (6) weeks." (ECF No. 149-1 at 17.) He then asked for "corrective action which would be to modify the access to the technology made availability to [him], or to allow [him] more time in the Law Library because it is the only place which [sic] [he] can read and write." *Id.* (emphasis omitted). He requested that "provisions be made for better compliance for [his] disability accommodation in this regard, and in accord with the settlement agreement." *Id.*

Although Richardson expresses dissatisfaction with the scheduling or certain appointments during the time he would otherwise be in the law library, the Settlement Agreement does not obligate VDOC to guarantee that he will have twenty hours in the law library, nor does it require VDOC to arrange his medical appointments around those hours. (ECF No. 140). Further, both Richardson's own records and Ms. Haislip's Affidavit demonstrate that Richardson is given permission to go to the Law Library when it is open. (Haislip Aff. ¶ 7; ECF No. 149-1 at 9-17.) Therefore, the Court is satisfied that VDOC has made "any and all appropriate efforts" to ensure that Richardson continues to receive this accommodation at State Farm. (ECF No. 140.)

### 2. VDOC Has Undertaken Appropriate Measures to Ensure Substantially Effective Communications.

Paragraph (1)(b)(iii) of the Settlement Agreement requires VDOC to ensure that Plaintiff "should not miss announcements, alarms, or any other auditory or visual information from VDOC staff provided to the general population because of his disability." (ECF No. 140 at 2.) The requirements of this provision are two-fold: (1) VDOC shall "take appropriate measures to ensure that all communications between Richardson and VDOC staff and the public are substantially as effective" as communications between VDOC and other inmates, such that Plaintiff can enjoy the benefits of VDOC's services, programs, and activities that are enjoyed by other inmates; and (2) ASL interpreters will be scheduled for all "lengthy and/or important communications," which includes communications concerning security, medical appointments, legal matters, official VDOC communications, and other communications for which Plaintiff "reasonably requests" an ASL interpreter. (ECF No. 140 at 3.)

Plaintiff contends that he has "no opportunity to participate in many of the recreational, programmatic opportunities, or other benefits and activities available to inmates who are not Deaf and Blind" and that he is missing announcements and other information routinely provided to the general population because of his disabilities. (ECF No. 136 at 4.) Plaintiff further alleges in his Reply that he is "currently being summarily denied" participation in such programs. (ECF No. 149 at 9.) Defendants argue that Plaintiff's allegations do not make clear which VDOC programs or communications he is referring to nor how he has been denied access or information, and thus, his allegations are insufficient to establish a breach. (ECF No. 139 at 5-6.) They affirm, however, that his claims about not being informed of prison notices, information, or other matters are unfounded, as he meets regularly with a counselor and interpreter "to discuss whatever [he] so wishes." (ECF No. 139 at 5.)

Throughout his pleadings, Richardson recites the language of paragraph (1)(b)(iii) in the Settlement Agreement to argue that he is denied announcements, alarms or other information provided to the general population. (ECF No. 137 at 4.) Merely alleging breach, without more, is insufficient to establish such. *See E. Claiborne Robbins Co., Inc. v. Teva Pharma. Indus. Ltd.*, 2019 WL 4482545, at *4 (E.D. Va. Sept. 18, 2019) (citations omitted). However, the Court applies a liberal construction of Richardson's pleadings filed *pro se*, although the requirement of liberal construction "does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." *James v. Wright*, No. 2:20-cv-4228-TMC-SVH, 2020 WL 8083879, at *1 (D.S.C. Dec. 11, 2020) (citing *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 390-91 (4th Cir. 1990)).

Here, Richardson appears to argue that documents are not provided to him within two working days of their provision to the general inmate population, and when they are, they are not produced in the Recommended Visual Combination he needs to be able to read them. (ECF No. 137 at 5.) He claims that "there are at least thirty or more notices on the wall in my living unit which have been posted for the inmate general population" that were not timely provided to him in a format which he can read. (ECF No. 149 at 15.) Further, a review of the record shows that Richardson notified VDOC in response to his various grievances that he was "unable to participate in the grievance procedure if [he] cannot read the response to a grievance, and there is no time for the interpreter service to adequately read the response." (*See generally* ECF No. 149, Attachments 1-11.) As a result, the Court finds that Richardson has sufficiently articulated how he believes VDOC violated Paragraph (1)(b)(iii).

However, a full review of the record does not reveal that Richardson has been deprived of the "opportunity to participate in, and enjoy the benefits of, VDOC's services, programs, or

activities," particularly given that he is allowed more time to access the library than other inmates[5] and meets regularly with interpreters to ensure that documents, including announcements, can be interpreted for him. Indeed, Defendants point out that Richardson's counselor reads documents aloud to the ASL interpreter, who in turn communicates their meaning to Richardson, during his weekly meetings. (Haislip Aff. ¶ 8.) According to Defendants, Richardson may address whatever he wishes with the interpreter and counselor during these sessions. (*Id.*)

In addition to meeting regularly with interpreters, VDOC has sufficiently shown that Richardson's medical and legal documents, as well as the internal grievances and notices are scanned and uploaded, and he has been provided with a sophisticated assistive device designed to further enhance his access. (Haislip Aff. ¶¶ 6-13.)  The record shows that VDOC has taken active and costly measures to meet his needs by purchasing a custom-made "MagniLink" device designed to assist him with reading documents and electronic messages, which it intends to transfer to "any facility at which Mr. Richardson may be housed at in the future." (Marano Decl. ¶¶ 6-11.) This custom assistive device has the capability of allowing Richardson to read his documents in the required color and font combination, which necessarily mitigates his concerns about the readability of certain documents in electronic, scanned, and printed form. (Marano Decl. ¶ 10.) As described by Mr. Marano, the MagniLink tablet allows Richardson to place any document or electronic tablet under its scanner and project that document or tablet's contents onto its screen. (*Id.* ¶¶ 7, 10.) From there, the tablet allows Richardson to magnify text and change the color contrasts without having to wait for staff to do so for him. (*Id.* ¶ 7.) Thus, the device will enable him to read his documents

---

[5] Defendants have granted Plaintiff unlimited access to State Farm's Law Library, which is open for twenty-two hours in any given week. (ECF No. 139 at 2, Haislip Aff. ¶ 7.) He may utilize the Law Library whenever it is open, whereas other inmates do not have unlimited access and must sign up for certain time slots if they wish to visit the Law Library. (Haislip Aff. ¶ 7.)

directly from his JPAY device and even have them read aloud to him. (*Id.* ¶¶ 10.) At a minimum, the Court finds that this demonstrates substantial compliance with the Settlement Agreement and satisfies the requirement to make "appropriate efforts" at the facility where Richardson is now confined. (*Id.*)

Moreover, the Court notes that the staff at State Farm endeavored to assist Richardson in using the device by providing him and staff with the necessary training on how to use it. (Marano Decl. ¶ 9.) Mr. Marano personally ensured that this device can be set to the color contrasts Plaintiff requires, and Ms. Haislip attested that the device is located in an accessible area for Richardson's use at this time. (Marano Decl. ¶ 8; Haislip Aff. ¶ 21.) Therefore, the Court is satisfied that VDOC's methods and efforts in this regard fulfill the requirement to provide Richardson with his documents in the "Recommended Visual Combination." (ECF No. 140 at 3.)

Likewise, Richardson's allegations that staff fail to assist him in printing envelopes and labels in a timely manner appear to be isolated instances indicating a lack of staff training more than a material breach of the provision itself. As M. Haislip attested, "one of Richardson's previous counselors had trouble printing some envelopes and instead of using a printer, this counselor was hand-writing the envelopes for Richardson. However, this has been corrected. As stated, Richardson's current counselor regularly prints his 'sticky labels' for Richardson to attach to envelopes." (Haislip Aff. ¶ 19.) Therefore, the Court finds that his allegations in this regard are without merit.

### 3. *VDOC Has Complied with the Settlement Agreement's Provision Ensuring the Scheduling of ASL Interpreters for Significant Communications.*

As stated previously, Paragraph (1)(b)(iii) includes a second requirement ensuring the scheduling of interpreters "for all lengthy and/or important communications . . . ." (ECF No. 140 at 2.) The record shows that Richardson meets regularly with interpreters, an essential provision

in the Settlement Agreement that also enables Richardson to engage in "Significant Communication." (ECF No. 140 at 2.) The Settlement Agreement defines "Significant Communication" as "all lengthy and/or important communications, which includes all communications with VDOC staff and employees concerning security, medical and health appointments and procedures, legal matters, official communications, other communications provided by VDOC, and communications for which Richardson reasonably requests an ASL Interpreter." (*Id.*)

In her affidavit, Ms. Haislip certified that all of Richardson's medical appointments, both onsite and offsite, are only scheduled for when an ASL interpreter is available to attend the appointment with him. (Haislip Aff. ¶ 9.) In addition to medical appointments, State Farm staff who have observed Richardson's regular sessions with his interpreter and counselor believe that two-hour sessions twice weekly are "more than adequate" to address his communication concerns. (*Id.*) Importantly, the Settlement Agreement does not hold State Farm to such an arrangement; rather, State Farm provides Richardson this opportunity in an effort to ensure that all communications between Richardson and VDOC staff are "substantially as effective" as those involving other inmates. Though Richardson may desire more time with an interpreter, the Settlement Agreement does not expressly provide for that.

The record also shows that VDOC has substantially complied with the provision of the Settlement Agreement requiring interpreters to be available for "significant communications," such as medical and health appointments. In instances where Richardson filed grievances for not having an interpreter available during medical appointments, a review of the record reveals that these were isolated incidents that amounted to mere trivial breaches, but are otherwise substantial compliance. *See Ballou v. Basic Const. Co.*, 407 F.2d 1137, 1140 (4th Cir. 1969).

For example, VDOC investigated Richardson's litany of complaints that an interpreter was not present during several scheduled meetings and medical appointments. (ECF No. 149, attachments 4-5.) In one such grievance, Richardson complained that an interpreter was unavailable during a scheduled meeting on October 22, 2024. (ECF No. 149-6.) VDOC's investigation subsequently found that the complaint was resolvable, owing to a "miscommunication" that caused the interpreter to be unavailable. (*Id.*) VDOC resolved to ensure that, "[m]oving forward, an interpreter will be present at State Farm Correctional Center two days a week to meet with you." (ECF No. 149-4.) The record shows that Richardson did, indeed, meet with interpreters following this incident, indicating substantial compliance with this provision.

Similarly, VDOC investigated another grievance Richardson filed regarding an incident on November 20, 2024. (ECF No. 149-5.) In that complaint, Richardson claimed that a nurse approached his bed area with medications, which he refused, to which the nurse replied to him without an interpreter present. (ECF No. 149-5 at 11.) VDOC determined that the nurse in question did not recall the incident, but that, at any rate, the interaction did not constitute a medical appointment as contemplated by the Settlement Agreement. (ECF No. 149-5 at 7.) Operations Manager M. Haislip nonetheless affirmed that "A qualified interpreter will be scheduled for all lengthy and important communications as well as all medical and health appointments." (*Id.*)

The record also contains a separate grievance filed by Richardson pertaining to an incident on the same day involving a nurse who came to his bed area and stood in an area where he could not see her before walking away from him. (ECF No. 149-7 at 7.) An investigation revealed that "nursing staff were asked about this situation and did not recall the interaction." (ECF No. 149-7 at 7.) It affirmed, again, that "A qualified interpreter will be scheduled for all lengthy and important

communications as well as all medical and health appointments. This did not constitute as [sic] a appointment." (*Id.*)

Similarly, VDOC investigated Richardson's subsequent complaint about the February 20, 2025 medical appointment that coincided with the time he was scheduled to meet with his interpreter to sign documents he had printed, which allegedly delayed his ability to file "time-sensitive documents." (ECF No. 149-15.) The investigation revealed the following:

> Your regularly scheduled appointment with an interpreter did not take place on February 20, 2025, due to your medical appointment at VCU. VCU provides an interpreter at your VCU appointment for you to receive necessary medical information. The regular interpreter was also unable to come on 2/20/2025 due to inclement weather. Due to your medical conditions your medical appointments must take priority over your regular schedule. You are given 10 additional days to submit time-sensitive documents to allow for such delays.

(ECF No. 149-15.) Although Richardson expresses dissatisfaction with the scheduling of certain appointments and availability of the interpreters, these concerns reflect at most delays or differences in implementation, not a failure of VDOC to undertake the "appropriate efforts" the Settlement Agreement requires. In fact, Richardson agrees that interpreters have been provided one to two times per week, for more than an hour and a half, which substantially complies with the Settlement Agreement's provision to ensure that communications between Richardson and VDOC staff "are substantially as effective as communications between other inmates and VDOC staff and the public." (ECF No. 140 at 2; 149 at 9.)

The record shows that any absences which occurred were isolated occasions and, at times, the result of circumstances outside VDOC's control. For example, an interpreter was unable to attend a scheduled meeting due to inclement weather (ECF No. 149-15), and on another occasion due to "car trouble." (ECF No. 149-15; 149-17.) Likewise, an interpreter who arrives late is not

equivalent to VDOC failing to schedule one at all. (*See* ECF No. 149-2 (explaining that the interpreter arrived one hour after Richardson was transported to VCU and all VCU interpreters were otherwise assisting other patients).) The grievance records further show that Richardson raised these concerns internally, and prison officials provided explanations for the temporary disruptions while reaffirming their commitment to abide by the Settlement Agreement going forward. Such episodic difficulties do not transform into a material breach, as the law recognizes that occasional imperfections or unavoidable disruptions do not defeat substantial compliance with a contract's terms. *See Scott v. Clarke, et al.*, 355 F. Supp. 3d 472, 504 (W.D. Va. 2019). In sum, Richardson's allegations do not support a finding that Defendants have materially breached this provision of the Settlement Agreement such that "the failure to perform that obligation defeats an essential purpose of the contract." *Mulugeta v. Ademachew*, 407 F. Supp. 3d 569, 592 (E.D. Va. 2019) (citations omitted).

## V.    CONCLUSION

Taken together, the evidence demonstrates that VDOC has substantially complied with the Settlement Agreement. The accommodations are not identical in every respect to those that were in place at Beaumont, but the Settlement Agreement did not require exact replication. Instead, it required VDOC to make "appropriate efforts" at the new facility, and the record shows that VDOC has done so through a combination of permissible law library access, regular interpreter scheduling, routine uploads of documents, and the provision of a costly assistive device. (ECF No. 140.)

The Court therefore concludes that VDOC has not materially breached the Settlement Agreement. For these reasons, it is hereby ORDERED that the Motion to Enforce (ECF Nos. 136, 137) and Motion for Settlement Conference or Plenary Hearing (ECF No. 155) are DENIED.

Let the Clerk notify all counsel of record and send of copy of this Memorandum Opinion to Plaintiff, who is proceeding *pro se*, at his current place of incarceration.

It is so ORDERED.

_____ /s/ MRC

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date:  October 3, 2025